IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0272
════════════
 
Entergy Gulf States, Inc., 
Petitioner,
 
v.
 
John Summers, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Ninth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued October 16, 
2008
 
 
            
Justice Green delivered the opinion of the Court, in 
which Justice Wainwright and Justice Brister joined, and in Parts I, 
II, III, IV, V, VI, VIII and IX of which Justice Hecht joined, and in Parts I, 
II, III, IV, V, VI, VII, and IX of which Justice Johnson joined, and in Parts I, 
II, III, VI, VII, and IX of which Justice 
Willett joined.
 
            
Justice Hecht filed a 
concurring opinion.
 
            
Justice Willett filed a 
concurring opinion.
 
            
Justice O’Neill filed a dissenting opinion in which 
Chief Justice Jefferson and Justice Medina joined.
 
 
            
Rehearing was granted in this case and our previous opinion was 
withdrawn. We now substitute the following in its place. The judgment remains 
unchanged.
* 
* * * *
            
In this workers’ compensation case, we decide whether a premises owner 
that contracts for the performance of work on its premises, and provides 
workers’ compensation insurance to the contractor’s employees pursuant to that 
contract, is entitled to the benefit of the exclusive remedy defense generally 
afforded only to employers by the Texas Workers’ Compensation Act. While the Act 
specifically confers statutory employer status on general contractors who 
qualify by providing workers’ compensation insurance for their subcontractors’ 
employees, it says nothing about whether premises owners who act as their own 
general contractor are also entitled to employer status, and thus the exclusive 
remedy defense. We hold that the exclusive remedy defense for qualifying general 
contractors is, likewise, available to premises owners who meet the Act’s 
definition of “general contractor,” and who also provide workers’ compensation 
insurance to lower-tier subcontractors’ employees. Because we conclude that 
Entergy Gulf States, Inc. meets the definition of “general contractor” under the 
Act, and because Entergy otherwise qualifies under the Act as having provided 
workers’ compensation insurance under its written agreement with International 
Maintenance Corporation (IMC), it is entitled to the exclusive remedy defense 
against the negligence claims brought by IMC’s 
employee, John Summers. We reverse the court of appeals’ judgment and render 
judgment for Entergy.
I
            
Entergy contracted with IMC to assist in the performance of certain 
maintenance, repair and other technical services at its various facilities. The 
parties agreed that Entergy would provide, at its own cost, workers’ 
compensation insurance for IMC’s employees through an 
owner provided insurance program, or OPIP, in exchange for IMC’s lower contract price. Entergy complied with its 
obligation under the agreement by purchasing workers’ compensation insurance 
covering IMC’s employees. John Summers, an IMC 
employee, was injured while working at Entergy’s Sabine Station plant. He 
applied for, and received, benefits under the workers’ compensation policy 
purchased by Entergy. He then sued Entergy for negligence. Entergy moved for 
summary judgment on the ground that it was a statutory employer immune from 
common-law tort suits. See Tex. 
Lab. Code § 408.001(a). The trial court agreed and 
granted judgment for Entergy. The court of appeals reversed. ___ S.W.3d ___. We granted Entergy’s petition for review to 
examine whether section 406.121(1) of the Workers’ Compensation Act excludes a 
premises owner from serving as its own general contractor for the purpose of 
qualifying for immunity as a statutory employer of its contractors’ 
employees.
II
            
The Act outlines a process by which a general contractor qualifies for 
immunity from common-law tort claims brought by the employees of its 
subcontractors.[1] First, the general contractor and 
subcontractor must enter into a written agreement under which the general 
contractor provides workers’ compensation insurance coverage to the 
subcontractor and the employees of the subcontractor. Id. § 
406.123(a).[2] This agreement makes the general 
contractor a statutory employer of the subcontractor’s employees for purposes of 
the workers’ compensation laws. Id. § 
406.123(e).[3] The statutory employer is entitled to 
immunity from common-law tort actions brought by the subcontractor’s employees, 
and a covered employee’s “exclusive remedy” for work-related injuries is 
workers’ compensation benefits. Id. § 408.001(a).[4]
            
Summers first argues that Entergy failed to establish as a matter of law 
that Entergy and Summers executed a written agreement 
under which Entergy would provide workers’ compensation coverage. See 
Tex. Lab. Code § 
406.123(a). Summers’ chief argument is that the contract 
for maintenance, construction, and general services was between IMC and another 
Entergy company, Entergy Services, Inc., as opposed to Entergy Gulf States, Inc. 
However, the contract stated that Entergy Services, Inc. acted for itself and as 
agent for other Entergy Companies, defined to include the Entergy petitioner 
here. Summers also admitted in his response to Entergy’s summary judgment motion 
that the contract was between IMC and Entergy Gulf States. In addition, the blanket 
contract order states that Entergy would be paying “O.P.I.P. wage rates,” 
indicating that the contract’s purpose included insurance coverage. Entergy also 
offered an affidavit from a risk manager, stating that pursuant to the contract 
between Entergy and IMC, Entergy agreed to procure a workers’ compensation 
policy for IMC employees. As a matter of law, these documents establish that 
Entergy satisfied the written agreement requirement under the statute. Under 
this agreement, the workers’ compensation coverage for IMC’s employees was secured by Entergy, not IMC. Likewise, 
it is undisputed that Summers sought and collected 
benefits for his injury from Entergy’s OPIP. Thus, in determining Entergy’s 
qualification as a statutory employer entitled to the exclusive remedy defense, 
the only remaining inquiry is whether Entergy falls within the Act’s definition 
of “general contractor.” Tex. Lab. Code § 406.121(1). We conclude 
that it does.
III
            
The meaning of a statute is a legal question, which we review de novo 
to ascertain and give effect to the Legislature’s intent. F.F.P. 
Operating Partners., L.P. v. Duenez, 237 S.W.3d 680, 683 (Tex. 2007). Where text is 
clear, text is determinative of that intent. State v. Shumake, 199 S.W.3d 279, 284 (Tex. 2006) (“[W]hen possible, we discern [legislative 
intent] from the plain meaning of the words chosen.”); see also Alex 
Sheshunoff Mgmt. Servs., 
L.P. v. Johnson, 209 S.W.3d 644, 651–52 (Tex. 2006). This general rule applies unless 
enforcing the plain language of the statute as written would produce absurd 
results. Fleming Foods of Tex., Inc. v. Rylander, 6 
S.W.3d 278, 284 (Tex. 1999). Therefore, our practice 
when construing a statute is to recognize that “the words [the Legislature] 
chooses should be the surest guide to legislative intent.” Fitzgerald v. 
Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 
866 (Tex. 
1999). Only when those words are ambiguous do we “resort to rules of 
construction or extrinsic aids.” In re Estate of Nash, 
220 S.W.3d 914, 917 (Tex. 2007).
            
With these principles in mind, we examine what the Legislature meant by 
the term “general contractor” in the workers’ compensation statute. We do not 
look to the ordinary, or commonly understood, meaning of the term because the 
Legislature has supplied its own definition, which we are bound to follow. Tex. Gov’t Code § 311.011(b). The Legislature 
defines “general contractor” as:
 
[A] person 
who undertakes to procure the performance of work or a service, either 
separately or through the use of subcontractors. The term includes a “principal 
contractor,” “original contractor,” “prime contractor,” or other analogous term. 
The term does not include a motor carrier that provides a transportation service 
through the use of an owner operator.
 
Tex. Lab. Code § 
406.121(1). That a premises owner can be a “person” within 
the meaning of the statute is not challenged. The dispute, instead, centers on 
whether one who “undertakes to procure the performance of work” can include a 
premises owner, or whether that phrase limits the definition of general 
contractor to non-owner contractors downstream from the owner.
            
Since the words contained within the definition are not themselves 
defined, we apply a meaning that is consistent with the common understanding of 
those terms. According to Black’s Law Dictionary, “undertake” generally means to 
“take on an obligation or task,” and “procurement” means “the act of getting or 
obtaining something.” Black’s Law 
Dictionary 981, 1238 (7th ed. 2000). In other words, a general contractor 
is a person who takes on the task of obtaining the performance of work. That 
definition does not exclude premises owners; indeed, it describes precisely what 
Entergy did. In the words of Summers’ own summary 
judgment response, Entergy “entered into a contract with [IMC] for IMC to 
perform various maintenance work at Entergy’s plant in Bridge City, Texas.” Therefore, we conclude that a premises 
owner can be a general contractor under the definition provided in the Act.
IV
            
The dissent, and some amici, 
contend that our reading of the statute constitutes a major change in the 
law that, for the first time, would enable premises owners to become statutory 
employers entitled to the exclusive remedy defense—a result they say the 
Legislature never intended. ___ S.W.3d ___. However, 
the Legislature enacted the section that established “deemed employer” status in 
1917, the very first provision to address a subscriber’s coverage of 
subcontractors’ employees. See Act of Mar. 28, 1917, 
35th Leg., R.S., ch. 103, § 1, Part II, sec. 6, 1917 
Tex. Gen. Laws 269, 284–85. Since then, subsequent revisions have not 
indicated an intent to create the kind of exception for 
owner-subscribers the dissent would now recognize. Indeed, when the “deemed 
employer” statute was first enacted, the Act made no reference at all to 
“general contractors.” Instead, the provision applied only to “subscribers,” a 
general term that included all purchasers of workers’ compensation 
insurance.[5] Id. Under this 1917 version, the 
statutory language broadly established, without qualification, that any 
subscriber, even a premises owner-subscriber, could qualify as a statutory 
employer. When the Legislature added the “written agreement” provision in 1983, 
definitions for “prime contractor” and “sub-contractor” were also added, but the 
term “subscriber” and the original “deemed employer” language were retained in 
the Act verbatim. Act of May 28, 1983, 68th Leg., R.S., ch. 950, § 1, sec. 6, 1983 Tex. Gen. Laws 5210, 
5210–11. The Act made no distinction between different kinds of entities 
up and down the contracting chain, for a good reason. For the purposes of the 
statute, it would be just as bad for owner-subscribers to try to avoid covering 
workers by subcontracting out the work as it would be for general contractors, 
subcontractors, or any other subscriber to do the same. The dissent fails to 
explain why the mere restructuring of this provision in 1983, which left in the 
old language referring to subscribers, demonstrates a legislative intent to 
reorder the scope of the Act’s coverage, not in a way that is consistent with 
its purpose of protecting workers by promoting coverage, but instead in a way 
that carves out an owner-exception from the Act’s protection for subscribers. 
Nor does the dissent attempt to explain why, if such a significant change in 
long-standing policy was intended, it was done in such 
an obscure manner.
V
            
The dissent contends that the Act never covered premises owners in the 
first place, and that owners were not included within the definition of general 
contractors in the 1989 amendment. We disagree. The originating statute applied 
to “any subscriber,” which necessarily means that, under the old version of the 
Act, a subscriber who also happened to be a premises owner would not be 
permitted to escape liability to a worker by contracting out the work. By 
operation of the statute, then, the owner-subscriber who contracted out work to 
avoid liability for its workers’ injuries would nevertheless be considered the 
employer, the injured worker would be entitled to benefits under the owner’s 
workers’ compensation policy, and the owner would be entitled to assert the 
exclusive remedy defense. See Act of Mar. 28, 1917, 
35th Leg., R.S., ch. 103, § 1, Part II, sec. 6, 1917 
Tex. Gen. Laws 269, 284–85. So while the provision may have been enacted 
for the purpose of preventing employers from trying to avoid liability, the 
scope of its application did not exclude premises owners.
            
In 1983, however, an amendment provided, for the first time, for 
voluntary employer status for upstream entities in the contracting chain 
through the use of written agreements between parties. Act of 
May 28, 1983, 68th Leg., R.S., ch. 950, § 1, sec. 6, 
1983 Tex. Gen. Laws 5210, 5210–11. More specifically, a general 
contractor was permitted to enter into a written agreement to provide workers’ 
compensation insurance coverage to its subcontractors and its subcontractors 
employees and, upon doing so, the “prime contractor”[6] would become, by virtue of the statute, 
the deemed employer of the subcontractors’ employees entitled to the exclusive 
remedy defense. The provisions of the old law survived the amendment[7] so, as before, “all subscribers” remained 
eligible for deemed employer status, including premises owners. The question 
that we address today is whether the Legislature, when it amended the statute, 
intended to exclude premises owners from the class of entities that would now be 
entitled to voluntarily contract for deemed employer status. We conclude that it 
did not.
            
There can be no doubt that premises owners can be, and often are, 
employers who carry workers’ compensation insurance. It is also true that owners 
frequently contract with others to perform work on their premises. But there has 
never been a requirement that an owner must first engage a general contractor to 
have work done on its premises. The owner is free to do the work with its own 
employees, to directly contract with others to do the work, or to do the work 
using some combination of the two. The dissent says an owner can be an employer, 
but cannot be a general contractor. However, we can find nothing in the statute 
specifying that an owner who also wears the hat of a general contractor is 
disqualified from coverage under the Workers’ Compensation Act simply because it 
chooses to contract directly for work on its premises.
            
Entergy did the very thing the Legislature has long tried to encourage; 
that is, Entergy became a subscriber by taking out a workers’ compensation 
policy for the entire work site. It would be an odd result, indeed, if this 
premises owner, acting as its own general contractor, and further acting in 
accordance with the State’s strong public policy interest of encouraging 
workers’ compensation insurance coverage for workers, was now to be excluded 
from the Act’s protections. See Tex. 
Workers’ Comp. Comm’n v. Garcia, 893 S.W.2d 504, 510–16 (Tex. 1995). Whether a premises owner, general 
contractor, prime contractor, or subcontractor, Entergy is a “subscriber” of a 
workers’ compensation policy and therefore satisfies the Legislature’s intent to 
ensure consistent and reliable coverage to all employees.
VI
            
The dissent and the court of appeals contend that the only way to qualify 
as a “general contractor” is to be included in a “tripartite” relationship in 
which a general contractor in the middle of the transaction has, first, 
undertaken to perform work for an owner, and second, contracted part of that 
work to a subcontractor. ___ S.W.3d ___. But the 
statute is not written so restrictively as to encompass only a 
three-party relationship, for several reasons. First, such a construction 
ignores the single exception found in the last sentence of the definition: “The 
term does not include a motor carrier that provides a transportation service 
through the use of an owner operator.” Tex. Lab. Code § 
406.121(1). Here, the inclusion of an “owner operator” in 
the definition’s only exception indicates that the Legislature intended for 
some owners to qualify as general contractors, while carving out only a 
narrow class of owners excluded from the term. Id. Since the 
Legislature clearly specified that the exception apply only to a very narrow 
class, we decline to read this narrow exception broadly to include all 
premises owners.
            
Second, the definition is not as restrictive as the dissent supposes 
because the second sentence of the definition, which specifies types of 
contractors to be included within the definition, specifically provides that the 
list is non-exhaustive. Id. (“The term includes a ‘principal 
contractor,’ ‘original contractor,’ ‘prime contractor,’ or other analogous 
term.”). If we held that an “owner contractor” is not analogous to a “principal 
contractor,” “original contractor,” or “prime contractor,” we would essentially 
be strictly construing a sentence that is explicitly non-exhaustive, as 
even the dissent concedes. ___ S.W.3d ___. Inasmuch as 
we have been instructed that “‘[i]ncludes’ and ‘including’ are terms of enlargement and not of 
limitation or exclusive enumeration,” Tex. Gov’t Code § 311.005(13), we are 
restrained from circumventing Legislative intent by excluding from a 
non-exhaustive list a term as similar as “owner contractor.” This is especially 
true since the original version of the Act, which shared the common purpose of 
encouraging coverage of subcontractors’ employees, did not define any of these 
disputed terms, but rather utilized a single term, “subscriber.” See Act of Mar. 28, 1917, 35th Leg., R.S., ch. 103, § 1, Part II, sec. 6, 1917 Tex. Gen. Laws 269, 
284–85. Since Entergy is a subscriber of a workers’ compensation policy, 
we cannot read such a non-exhaustive list to evince the Legislature’s intent to 
remove Entergy from a category in which it would have been included under 
previous versions of the same act.
            
Additionally, such a reading renders meaningless the part of the 
definition that qualifies how a general contractor “undertakes to procure 
the performance of work.” Tex. Lab. Code §406.121(1) (a general contractor 
“undertakes to procure the performance of work or a service, either 
separately or through the use of subcontractors”) (emphasis added). A 
reasonable reading of the words, “either separately or through the use of 
subcontractors,” recognizes the distinction between the owner who takes it upon 
himself “separately” to procure the performance of work from subcontractors, and 
the owner who undertakes with a middleman “general contractor” to procure the 
performance of work “through the use of subcontractors.” See id.; see 
also Black’s Law Dictionary 
1099 (7th ed. 2000) (“Separate” is defined as “individual; distinct, 
particular; disconnected”). Certainly, one can hire a bricklayer, electrician, 
or cabinet maker to remodel his own office building—thereby acting 
“separately”—or, he can hire a general contractor to do the same thing—thereby 
acting “through the use of subcontractors.” This qualifier suggests that the 
Legislature at least contemplated the existence of a premises owner who may want 
to act as its own general contractor—an outcome that is by no means uncommon.[8] The dissent’s reading would have us read 
out this qualifier entirely, but we do not interpret a statute in a manner that 
renders parts of it meaningless. See Kerrville State Hosp. v. Fernandez, 
28 S.W.3d 1, 8 (Tex. 2000) (citing City of 
LaPorte v. Barfield, 898 S.W.2d 288, 292 
(Tex. 
1995).
            
Finally, we address Williams v. Brown & Root, Inc., the case relied on by the court of appeals in reaching its 
conclusion that a premises owner is excluded from the Act’s definition of 
“general contractor.” 947 S.W.2d 673 (Tex. App.—Texarkana 
1997, no writ). In Williams, a premises owner, Eastman, contracted 
with Brown & Root to provide occasional construction services. Id. at 
675. Brown & Root subcontracted part of the work to Tracer. 
Id. 
Tracer’s employee, Williams, was injured on Eastman’s jobsite, so he applied for 
and received benefits from Eastman’s workers’ compensation policy covering 
Tracer. Id. After Williams sued Eastman and 
Brown & Root for his injuries, the trial court granted summary judgment for 
both defendants, in part because the exclusive remedy was workers’ compensation 
insurance, which had already been provided. Id. On appeal, the court of appeals 
rejected the argument that the predecessor to this section of the Act[9] did not contemplate granting immunity to 
more than one general contractor. Id. at 676–77. Instead, the court of appeals held that Brown 
& Root qualified as a general contractor because it procured Tracer’s 
services, adding that even if the statute protected only one general contractor, 
that party was Brown & Root because “[a] general contractor is any person 
who contracts directly with the owner.” Id. at 677 (internal citations and quotations omitted). 
“Arguably,” the court observed, “because Eastman did not contract with the 
owner, but instead was the owner, Eastman was not protected [by the statute].” 
Id. Not 
only was the court’s observation here unnecessary to the decision in the case, 
it was also erroneous. The court erred by subordinating the statute’s specific 
definition of “general contractor” in favor of a generic definition outside the 
statute. Id. at 677 (“A general contractor is 
any person who contracts directly with the owner . . . .”) (internal citations and quotations omitted)). Since the 
Legislature provided its own definition for “general contractor,” we elevate the 
Legislature’s substituted meaning even when it departs from the term’s ordinary 
meaning. Tex. Gov’t 
Code § 311.011(b).
VII
            
We granted rehearing to address several supplemental arguments made by 
the respondent and by a number of amici, many of which 
urge us to address the issue before us by going beyond the statutory text and 
looking to extrinsic aides such as the Act’s legislative history. But we have 
been clear that we do not resort to such extrinsic aides unless the plain 
language is ambiguous. See, e.g., Nash, 220 S.W.3d at 917 (“If a 
statute is clear and unambiguous, we apply its words according to their common 
meaning without resort to rules of construction or extrinsic aides.”); Sheshunoff, 209 S.W.3d at 652 
n.4.
            
Even if we assume the definition of “general contractor” is ambiguous, 
the legislative history of the bill’s passage favors Entergy, not Summers. The legislative history that supports Summers’ 
outcome is apparent only in bills that failed to pass,[10] yet “we attach no controlling 
significance to the Legislature's failure to enact [legislation],” Texas 
Employment Comm’n v. Holberg, 440 S.W.2d 38, 42 (Tex. 1969), for the simple 
reason that “[i]t is always perilous to derive the 
meaning of an adopted provision from another provision deleted in the drafting 
process.” Dist. of Columbia v. Heller, 128 S.Ct. 2783, 2796 (2008); see also Dutcher v. Owens, 647 S.W.2d 948, 950 
(Tex. 1983) 
(discerning legislative intent from failed bills would be mere “inference” that 
“would involve little more than conjecture”).[11]
            
As for the legislative history of what did pass, the 1989 overhaul 
of the Workers’ Compensation Act amended the statutory definition of 
“subcontractor.” Under the pre-1989 definition, a subcontractor was defined as 
“a person who has contracted to perform all or any part of the work or services 
which a prime contractor has contracted with another party to perform.” 
Act of May 28, 1983, 68th Leg. R.S., ch. 950, § 1, 1983 Tex. Gen. Laws 5210, 5210, amended 
by Act of Dec. 11, 1989, 71st Leg., 2d C.S., ch.1, § 3.05(a)(5), 1989 Tex. 
Gen. Laws 1, 15 (emphasis added). The Act, as amended, deleted “with another 
party,” which is the very phrase that Summers argues 
prevents a premises owner from also being the general contractor. See 
Wilkerson v. Monsanto Co., 782 F. Supp. 1187, 1188–89 (E.D. Tex. 1991) 
(interpreting “contracted with another party” in the pre-1989 definition to mean 
the prime contractor and premises owner must be distinct entities). We give 
weight to the deletion of the phrase “with another party” from the amended 
definition since we presume that deletions are intentional and that lawmakers 
enact statutes with complete knowledge of existing law. See Acker v. 
Tex. Water Comm’n, 790 S.W.2d 299, 301 
(Tex. 1990). 
It is, of course, axiomatic that the deletion of language better indicates the 
Legislature’s intent to remove its effect, rather than to preserve it. Thus, the 
removal of the phrase “with another party” from the subcontractor definition 
favors, rather than argues against, an interpretation allowing premises owners 
to act as their own general contractors for the purpose of workers’ compensation 
laws. Tex. Lab. 
Code § 
406.121(5). Enforcing the law as written is a court’s 
safest refuge in matters of statutory construction, and we should always refrain 
from rewriting text that lawmakers chose, but we should be particularly 
unwilling to reinsert language that the Legislature has elected to delete. 
See Simmons v. Arnim, 220 S.W. 66, 70 
(Tex. 1920) 
(“Courts must take statutes as they find them.”).
            
Amici cite to statements by some lawmakers that 
the Act, and particularly the 1989 amendment, was never intended to provide 
statutory employer status to premises owners. Just as we decline to consider 
failed attempts to pass legislation, we likewise decline consideration of 
lawmakers’ post-hoc statements as to what a statute means. It has been our 
consistent view that “[e]xplanations produced, after 
the fact, by individual legislators are not statutory history, and can provide 
little guidance as to what the legislature collectively intended.” In re Doe, 19 S.W.3d 346, 352 (Tex. 2000) (citations and 
quotations omitted). At bottom, at least some of the amici seem to argue that the workers’ compensation scheme is 
itself inadequate, and that an injured employee should have remedies available 
apart from the benefits offered by the Act, including the ability to sue a 
negligent premises owner. As a judicial question, this argument lacks merit 
because the availability and adequacy of workers’ compensation benefits is a 
purely legislative matter.
VIII
            
Excluding a premises owner who acts as a general contractor also fails to 
serve the public policy of encouraging workers’ compensation coverage for all 
workers. See Wingfoot Enters. v. Alvarado, 111 
S.W.3d 134, 140, 142 (Tex. 2003); Garcia, 893 S.W.2d at 521. 
As noted, the Act offers incentives to general contractors to provide workers’ 
compensation coverage broadly to work site employees. In exchange, the Act 
specifically protects general contractors—who are not direct employers of 
subcontractors’ employees—by allowing them to assert as a statutorily deemed 
employer the exclusive remedy defense. In light of this statutory protection, it 
would seem to be contrary to the state’s public policy to read out of the Act’s 
protections those premises owners who have otherwise qualified under the Act by 
purchasing workers’ compensation coverage for their work site employees, but who 
have chosen to act as their own general contractor.
            
In the dissent’s view, a premises owner who, in complying with the Act, 
enters into a written agreement to provide workers’ compensation coverage to all 
contractors and contractors’ employees at its work site would be the only 
contractor-employer in the contracting chain not afforded the exclusive remedy 
defense. Presumably, in that event all the downstream contractors would be 
considered subscribers under the premises owner’s OPIP, thereby qualifying as 
statutory employers by virtue of their written agreements. See Tex. Lab. Code § 
406.123(a). But the dissent would disqualify the premises 
owner—the one who secured and actually paid for the policy—from being a 
statutory employer of his subcontractors’ employees. As a result, the premises 
owner’s own employees, working side-by-side with the other contractors’ 
employees, would be limited to workers’ compensation benefits for their injuries 
while the other contractors’ employees injured in the same accident would be 
permitted to seek tort remedies against the premises owner in addition to the 
workers’ compensation benefits provided by the premises owner. Unless the 
statute directs such a result, it makes no sense to read the statute in such an 
unreasonable manner. The dissent contends that this outcome is a policy choice 
made by the Legislature, but we interpret the statute in the context of a policy 
that encourages the provision of workers’ compensation coverage to all 
workers on a given work site, not discouraging it by denying the 
statute’s protections to the owner who enters into just such a plan.
IX
            
We conclude that Entergy qualifies under the Act’s definition as a 
“general contractor” and, as a statutory employer, is entitled to assert the 
exclusive remedy defense. Tex. Lab. Code § 408.001. The judgment of 
the court of appeals is reversed and a take-nothing judgment is rendered in 
favor Entergy.
            

            
_____________________________
            
Paul W. Green
            
Justice
            

 
OPINION DELIVERED: April 3, 
2009








[1] 
Such immunity arises when the statutory employer invokes the “exclusive remedy” 
defense, which limits the employee’s “exclusive remedy” to recovery of workers’ 
compensation benefits. Tex. Lab. Code § 408.001(a).

[2] 
“A general contractor and a subcontractor may enter into a written agreement 
under which the general contractor provides workers’ compensation insurance 
coverage to the subcontractor and the employees of the subcontractor.” Tex. Lab. Code § 
406.123(a).

[3] 
“An agreement under this section makes the general contractor the employer of 
the subcontractor and the subcontractor’s employees only for purposes of the 
workers’ compensation laws of this state.” Id. § 406.123(e).

[4] 
“Recovery of workers’ compensation benefits is the exclusive remedy of an 
employee covered by workers’ compensation insurance coverage or a legal 
beneficiary against the employer or an agent or employee of the employer for the 
death of or a work-related injury sustained by the employee.” Id. § 
408.001(a).

[5] 
It has long been the policy of this State, expressed in every version of the 
Act, that no subscriber can avoid covering an injured worker merely because he 
was employed by a subcontractor. The 1917 version of the Act created a “deemed” 
employer status to address this concern:
                                                                                                                                                                                                                                                
                

If any subscriber to this Act with the purpose and 
intention of avoiding any liability imposed by the terms of the Act sublets the 
whole or any part of the work to be performed or done by said subscriber to any 
sub-contractor, then in the event any employe[e] of 
such sub-contractor sustains an injury in the course of his employment he shall 
be deemed to be and taken for all purposes of this Act to be the employe[e] of the subscriber, and in addition thereto such 
employe[e] shall have an independent right of action 
against such sub-contractor, which shall in no way be affected by any 
compensation to be received by him under the terms and provisions of this 
Act.
 
Act of Mar. 28, 1917, 35th Leg., R.S., 
ch. 103, § 1, Part II, sec. 6, 1917 Tex. Gen. Laws 
269, 284–85. In 1983, HB 1852 
amended the statute by adding a different provision using the term “prime 
contractor,” defined to mean “the person who has undertaken to procure the 
performance of work or services.” Act of May 28, 1983, 68th 
Leg., R.S., ch. 950, § 1, sec. 6, 1983 Tex. Gen. Laws 
5210, 5210–11. Then, in 1989, the last major overhaul of the Act kept the 
“undertaken to” definition, but substituted the term “prime contractor” for 
“general contractor” and defined that person with the same language: “a person 
who has undertaken to procure the performance of work or services, either 
separately or through the use of subcontractors.” Act of Dec. 
12, 1989, 71st Leg., 2d C.S., ch. 1, § 3.05, 1989 Tex. 
Gen. Laws 1, 15. The 1917 “deemed employer” provision remains virtually 
unchanged in the current Labor Code, except the term “subscriber” has been 
replaced by the term, “person who has workers’ compensation insurance coverage.” 
Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 987, 1159 (current version 
at Tex. Lab. Code § 
406.124).

[6] 
“Prime contractor” was later replaced by the current term, “general contractor,” 
but the definition remained substantively verbatim. Act of May 28, 1983, 68th 
Leg., R.S., ch. 950, § 1, sec. 6(c), 1983 Tex. Gen. 
Laws 5210, 5210–11 amended by Act of Dec. 12, 1989, 71st Leg., 2d C.S., 
ch. 1, § 3.05(a)(2), 1989 Tex. Gen. Laws 1, 15 
(current version at Tex. Lab. Code §406.121(1).

[7] 
Act of May 28, 1983, 68th Leg., R.S., ch. 950, § 1, 
sec. 6(d), 1983 Tex. Gen. Laws 5210, 5211 (current version at Tex. Lab. Code § 
406.124).

[8] 
See, e.g., CLDC Mgmt. Corp. v. Geschke, 72 F.3d 1347, 1349 (7th Cir. 1996) (noting that 
“the Geschkes chose to act as their own general 
contractor on the job”); Milwaukee & Southeast Wisconsin Dist. Council of 
Carpenters v. Rowley-Schlimgen, Inc., 2 F.3d 765, 
767–68 (7th Cir. 1993) (“[T]he Board held that Church’s Fried Chicken . . . 
functioned as its own general contractor in the ‘continuing operation of 
building stores.’”); Applewood Landscape 
& Nursery Co., Inc. v. Hollingsworth, 884 F.2d 1502, 1503 
(1st Cir. 1989) (noting that appellant who built house for himself “decided to 
act as his own general contractor, at least in respect to landscaping”); 
Lazar Bros. Trucking, Inc. v. A & B Excavating, Inc., 850 N.E.2d 215, 
217 (Ill. App. Ct. 2006) (noting that appellee “sought 
to develop land it owned” and “decided to act as its own general contractor for 
the project”); 1000 Va. Ltd. P’ship v. Vertecs Corp., 146 P.3d 423, 426 (Wash. 2006) (noting 
that partnership, “acting as its own general contractor, built an apartment 
complex”); Waggoner Motors, Inc. v. Waverly Church of Christ, 159 S.W.3d 
42, 47 (Tenn. Ct. App. 2004) (noting that appellant “church, acting as its own 
general contractor, began constructing a 9,000-square-foot general purpose 
building in back of its existing building”); Mortenson v. Leatherwood Constr., Inc., 137 S.W.3d 529, 531 (Mo. Ct. App. 2004) 
(noting that school district “acted as its own general contractor” on project to 
construct addition to school); Wheeler v. T.L. Roofing, Inc., 74 P.3d 
499, 501 (Colo. Ct. App. 2003) (noting that, on roofing job, “[p]laintiff acted as his own general contractor”); Cuero v. 
Ryland Group, Inc., 849 So.2d 326, 329 (Fla. Dist. 
Ct. App. 2003) (“Ryland undertook to develop its own 
property acting as it own general contractor.”); Harris v. Rio Hotel & 
Casino, Inc., 25 P.3d 206, 207–08 (Nev. 2001) (holding that landowner could 
be deemed a statutory employer entitled to workers’ compensation 
immunity).

[9] 
Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 
3.05, 1989 Tex. Gen. Laws 1, 15, repealed by Act of May 22, 1993, 73rd 
Leg., R.S., ch. 269, §5, 1993 Tex. Gen. Laws 987, 1273 
(current version at Tex. Lab. Code § 406.121).

[10] Summers and amici 
point to nine failed bills as evidence the Legislature has “repeatedly” rejected 
efforts to let premises owners assert the exclusive remedy defense. 
Chronologically, the bills are HB 2279 from the 74th Legislature (1995), HBs 2630 and 3024 from the 75th Legislature (1997), SB 1404 
from the 76th Legislature (1999), HBs 3120 and 3459 
from the 77th Legislature (2001), HB 2982 and SB 675 from the 78th Legislature 
(2003), and HB 1626 from the 79th Legislature (2005).

[11] Even if we were to consider failed bills, 
these cited bills were not only unsuccessful but, with one possible exception, 
unrelated to this case. See SB 1404 from the 76th Legislature (1999) 
(amending “general contractor” to include “an owner or lessor of real property”).