**Bill G. WILLIAMS, Appellant,**

v.

**BROWN & ROOT, INC., Appellee.**

No. 06–96–00112–CV.

Court of Appeals of Texas, Texarkana.

Argued May 22, 1997.

Decided June 6, 1997.

Steven E. Norris, Longview, for appellant.

Roy E. Price, Jr., Sloan & Price, Longview, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Bill G. Williams ("Williams"), the plaintiff-appellant, appeals from a summary judgment in favor of the defendant-appellee, Brown & Root, Inc. ("Brown & Root"). Williams alleged that Brown & Root's negligent acts caused a workplace injury. However, in granting the summary judgment, the trial court concluded either (1) that Brown & Root was immune from suit because it provided workers' compensation coverage, or (2) that Brown & Root was immune from suit because it was a "fellow servant"[1] of Williams. Williams brings one point of error, contending that the trial court erroneously granted summary judgment. We will overrule Williams' contention and affirm the judgment.

None of the summary judgment evidence is contradicted. In 1967, Brown & Root entered into a contract to provide occasional construction services to Texas Eastman Company ("Eastman"). Under a 1987 amendment to this contract, Eastman agreed to furnish workers' compensation insurance coverage to Brown & Root when Brown & Root was working for Eastman. Pursuant to this contract, in 1989, Eastman, claiming to act as a general contractor, subcontracted "a large portion" of a construction project on its Harrison County plant to Brown & Root. Brown & Root then subcontracted a portion of its work to Tracer Construction Company ("Tracer"). Acting under Eastman's authority, Brown & Root agreed to provide workers' compensation insurance coverage for Tracer through Eastman's "Owner Controlled Insurance Program." Eastman then requested its agent, Marsh & McLennan, to add Tracer as an insured. Marsh & McLennan thereby provided Tracer with workers' compensation insurance underwritten by Employers Casualty Company ("Employers"). Brown & Root and Tracer reduced their contract prices by the cost of providing workers' compensation coverage. The policy covering Tracer and its employees was in effect from September 19, 1990 through April 29, 1991.

Williams, a Tracer employee, claimed workers' compensation for injuries incurred on February 23, 1991, as the result of slipping while descending the stairs during an evacuation caused by a gas leak at the Eastman site. Employers paid Williams $64,446.76 in medical and lost wages benefits as a result of this claim.

On February 10, 1993, Williams sued Brown & Root and Eastman for negligently permitting the stairs to be slippery. On September 19, 1993, the trial court granted summary judgment for Eastman, apparently because Eastman provided workers' compensation coverage for Williams. On September 5, 1996, Brown & Root moved for summary judgment, claiming immunity from suit because it provided workers' compensation coverage to Williams and was a "fellow servant" of Williams. Summary judgment was granted, in broad form, on October 25, 1996.

■ Brown & Root has the burden of showing this Court that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Wilcox v. St. Mary's Univ.*, 531 S.W.2d 589, 592–93 (Tex.1975). Williams has not presented any evidence contravening Brown & Root's relevant summary judgment proof; therefore, we need only to decide whether Brown & Root was entitled to judgment as a matter of law. In granting summary judgment, the trial court did not limit its ruling to either of the grounds urged by Brown & Root. Therefore, this Court must affirm the summary judgment if either of those grounds is meritorious. *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993).

■ "The provisions of the Workers' Compensation Act in force at the time of the *accident* determine the rights and duties of the parties." *Gibson v. Grocers Supply Co.*, 866 S.W.2d 757, 759 (Tex.App.-Houston [14th Dist.] 1993, no writ). Therefore, we look to 1991 law in discussing this case. Brown & Root claims that it is immune from suit because it provided workers' compensation cov-

---

1. Brown & Root uses this term to describe the status that it contends it has with Williams as subcontractor "employees" of a general contractor (Eastman) for purposes of Article 8308–3.05.

erage pursuant to Tex.Rev.Civ. Stat. Ann. art. 8308–3.05(e) [2]. This section provided:

> A general contractor and a subcontractor may enter into a written agreement under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor. If a general contractor elects to provide that coverage, then, notwithstanding Section 10.02 of this Act, the actual premiums, based on payroll, that are paid or incurred by the general contractor for the coverage may be deducted from the contract price or any other amount owed to the subcontractor by the general contractor. In any agreement under this subsection, the subcontractor and his employees shall be considered employees of the general contractor for the purposes of workers' compensation law of this state and for no other purposes.

If this section is applicable, then Williams' exclusive remedy against Brown & Root is the acceptance of workers' compensation benefits. TEX.REV.CIV. STAT. ANN. art. 8308–4.01(a) [3].

■ Williams makes several arguments as to why Article 8308–3.05(e) does not provide immunity to Brown & Root. First, Williams notes that the trial court has determined that this same section provides immunity to Eastman. Williams contends that the statute does not contemplate granting immunity to more than one general contractor. Therefore, Williams argues that because Eastman is immune, Brown & Root cannot be immune.

TEX.REV.CIV. STAT. ANN. art. 8308–3.05(a)(2) [4] defines "general contractor":

> "General contractor" means a person who has undertaken to procure the performance of work or services, either separately or through the use of subcontractors. The term includes a "principal contractor,"

"original contractor," "prime contractor," or an analogous term. . . .

In *Chagolla v. O.T. Dunlap Constr.*, 838 S.W.2d 943 (Tex.App.-Houston [1st Dist.] 1992, writ denied), the plaintiffs-appellants, representing the estate of a dead employee, argued that the defendant-appellee was not protected by the predecessor statute to Article 8308–3.05(e). The predecessor statute protected "prime contractor[s]," a term defined similarly to the way "general contractor" is now defined. The appellee was a subcontractor that in turn subcontracted work to the dead employee's employer. The appellants argued that the appellee was not a "prime contractor" because it was a subcontractor. The court rejected this argument:

> We disagree with [the appellants]. Article 8307, § 6(c) states that the "term 'prime contractor' includes 'principal contractor,' 'original contractor,' or 'general contractor' as those terms are commonly used *and means the person who has undertaken to procure the performance of work or services.*" Clearly, [the appellee] "under[took] to procure the performance of work or services" in this case, because it hired [the appellant's employer] to perform duties on the project. This made [the appellee] a "prime contractor" under the statute.
>
> [The appellants] cite no authority for the proposition that the statute does not apply to a company which, like [the appellee], was both a subcontractor and a company who undertook to procure the performance of work or services. Nor can we find such authority. The statute defines the term "prime contractor" to encompass companies that undertake to procure the performance or work or services, a category that clearly can include companies that are hired as subcontractors and that hire subcontractors for their own work, as well.

**2.** Act of Dec. 12, 1989, 71st Leg., 2nd C.S., ch. 1, § 3.05, 1989 Tex. Gen. Laws 1, 15, *repealed by* Act of May 22, 1993, 73rd Leg., R.S., ch. 269, § 5, 1993 Tex. Gen. Laws 1273 (now codified at TEX. LAB.CODE ANN. § 406.123(a), (d), (e) (Vernon 1996)).

**3.** Act of Dec. 12, 1989, 71st Leg., 2nd C.S., ch. 1, § 4.01, 1989 Tex. Gen. Laws 1, 32, *repealed by* Act of May 22, 1993, 73rd Leg., R.S., ch. 269,

§ 5, 1993 Tex. Gen. Laws 1273 (now codified at TEX. LAB CODE ANN. § 408.001(a) (Vernon 1996)).

**4.** Act of Dec. 12, 1989, 71st Leg., 2nd C.S., ch. 1, § 3.05, 1989 Tex. Gen. Laws 1, 15, *repealed by* Act of May 22, 1993, 73rd Leg., R.S. ch. 269, § 5, 1993 Tex. Gen. Laws 1273 (now codified at TEX. LAB.CODE ANN. § 406.121 (Vernon 1996)).

*Chagolla*, 838 S.W.2d at 946 (citation omitted). Similarly, in the instant case, Brown & Root qualifies as a general contractor because it procured Tracer's services. Therefore, Brown & Root can avail itself of the protections of Article 8308–3.05(e). Article 8308–3.05(e) does not indicate that only one general contractor can take advantage of its protections. If the section does protect only one party, that party is Brown & Root. A general contractor "is any person who contracts directly with the owner, the phrase not being limited to one undertaking to complete every part of the work." 17 C.J.S. *Contracts* § 11 (1963). Arguably, because Eastman did not contract with the owner, but instead was the owner, Eastman was not protected by Article 8308–3.05. *Wilkerson v. Monsanto Co.*, 782 F.Supp. 1187, 1189 (E.D.Tex.1991). However, Williams cannot argue that the summary judgment in favor of Eastman somehow eviscerates Brown & Root's right to rely on Article 8308–3.05(e).

■ Next, Williams makes an argument revolving around the formalization of the relationship between Brown & Root and Tracer. Williams notes that Tracer's workers' compensation insurance was effective September 19, 1990. Although the contract between Brown & Root and Tracer stated that it was effective on August 2, 1990, it was not signed by both parties until October 9, 1990. The "change order" incorporating workers' compensation coverage into the subcontract was not signed by both parties until October 21, 1990. Williams argues that there was no general contractor/subcontractor relationship at the time workers' compensation was provided (September 19, 1990) and that Brown & Root therefore cannot claim the protection of Article 8308–3.05(e). However, not all unsigned contracts are invalid. *Simmons and Simmons Constr. Co. v. Rea*, 155 Tex. 353, 286 S.W.2d 415, 417–19 (1955). Regardless, Article 8308–3.05 does not require that the general contractor/subcontractor relationship be a formal contract. Nor does it prohibit the provision of workers' compensation insurance in anticipation of the formation of a general contractor/subcontractor relationship. In short, Williams' argument has no statutory basis.

■ Next, Williams notes that the statute requires a general contractor to provide workers' compensation insurance. Williams argues that Eastman, not Brown & Root, provided workers' compensation insurance and that Brown & Root therefore did not meet the requisites of the statute. Additionally, the statute refers to "the actual premiums ... that are paid or incurred by the general contractor for the coverage." Williams argues that Eastman, not Brown & Root, paid for the premiums.

Williams' argument is answered by looking to employee-lease cases. In these cases, an employee of one company is assigned to work for another company. After the employee is injured, he collects workers' compensation from his original employer, then sues the second company for his injuries. Invariably, the second company is immune because it has contractually arranged for the first company to provide workers' compensation coverage. It does not matter that the second company does not pay directly for the coverage. *Brown v. Aztec Rig Equip., Inc.*, 921 S.W.2d 835, 841–42 (Tex.App.-Houston [14th Dist.] 1996, writ denied); *Rodriguez v. Martin Landscape Management, Inc.*, 882 S.W.2d 602, 604 (Tex.App.-Houston [1st Dist.] 1994, no writ); *Pederson v. Apple Corrugated Packaging, Inc.*, 874 S.W.2d 135, 136–37 (Tex.App.-Eastland 1994, writ denied); *Gibson v. Grocers Supply Co.*, 866 S.W.2d 757, 759 (Tex.App.-Houston [14th Dist.] 1993, no writ); *Marshall v. Toys–R–Us Nytex, Inc.*, 825 S.W.2d 193, 195–96 (Tex. App.-Houston [14th Dist.] 1992, writ denied); *Cherry v. Chustz*, 715 S.W.2d 742, 743 (Tex. App.-Dallas 1986, no writ). There is "no reason why an employer cannot contractually provide for payment of premiums on his employees by a third-party acting on his behalf." *Cherry*, 715 S.W.2d at 744. "The manner in which the insurance is paid is immaterial, so long as there is a compensation policy in force." *Brown*, 921 S.W.2d at 842.

■ Similarly, the statute in question in this case does not prescribe the manner of provision of or payment for workers' compensation coverage. Affidavits of employees of Eastman, Brown & Root, and Tracer estab-

lish that Tracer was provided insurance because of the contract between Eastman and Brown & Root. Williams characterizes these affidavits as unsubstantiated. However, even if unsubstantiated, the affidavits are uncontradicted. Courts must take uncontradicted summary judgment evidence as absolutely true. *Simmons v. Flores*, 838 S.W.2d 287, 289 (Tex.App.-Texarkana 1992, writ denied). Brown & Root paid for workers' compensation insurance by a reduction in Eastman's contract price. However, it should be noted that, when read closely, the statute does not require the general contractor to "pay" for the insurance. It is incumbent upon the general contractor only to "provide" the insurance. Because Brown & Root provided workers' compensation insurance to Tracer, Williams' argument is without merit.

Because we conclude that Brown & Root provided workers' compensation coverage, we need not determine whether Brown & Root was a "fellow servant" of Williams.

The judgment of the trial court is affirmed.