IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0272
════════════
 
Entergy Gulf States, Inc., 
Petitioner,
 
v.
 
John Summers, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Ninth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued January 24, 
2007
 
 
Justice Willett delivered the opinion of 
the Court.
In this 
workers’ compensation case we decide whether a premises owner can also be a 
“general contractor” under the Labor Code and thus qualify for the 
exclusive-remedy defense. We hold that a premises owner that “undertakes to 
procure” work falls within the statute’s definition of a general contractor.
I. Background
            
John Summers sued Entergy Gulf States, Inc. for injuries he sustained 
while working at Entergy’s Sabine Station plant as an employee of International 
Maintenance Corp. (IMC). IMC had contracted with Entergy to perform construction 
and maintenance on Entergy’s premises. This contract refers to IMC as an 
“independent contractor” and “contractor,” while referring to Entergy and its 
affiliates as “Entergy Companies.” The portion of the contract defining IMC as 
an independent contractor specifies that this language should not be construed 
to bar Entergy from raising the “Statutory Employee” defense. Entergy later sent 
IMC a letter, which included an addendum to the contract, providing that the 
parties would recognize Entergy as the statutory employer of the IMC employees 
(while IMC would remain the “direct employer”) in order to take advantage of a 
Louisiana law that shields statutory employers from tort liability.[1]
            
Entergy also agreed to provide workers’ compensation insurance to IMC’s Sabine plant employees in exchange for a lower 
contract price. Entergy obtained an insurance policy and paid the premiums. 
While this policy was in effect, Summers was injured at the Sabine plant. He 
applied for and received benefits under the policy, then sued Entergy for 
negligence. Entergy moved for summary judgment, arguing that it was a general 
contractor, and thus a deemed employer shielded from Summers’s suit under the Texas Workers’ Compensation Act, as 
now codified in the Texas Labor Code.[2] The district court agreed and granted 
summary judgment in Entergy’s favor. The court of appeals reversed.[3]
 
II. Discussion
            
The Labor Code makes workers’ compensation benefits an employee’s 
“exclusive remedy” against an employer for covered work-related injuries.[4] It defines “general contractor” as “a 
person who undertakes to procure the performance of work or a service, either 
separately or through the use of subcontractors.”[5] A general contractor “may enter into a 
written agreement [with a subcontractor] under which the general contractor 
provides workers’ compensation” coverage to the subcontractor and the 
subcontractor’s employees,[6] and such an agreement “makes the general 
contractor the employer of the subcontractor and the subcontractor’s employees” 
for purposes of the workers’ compensation laws.[7]
A. Whether a “Written Agreement” Exists Under the Act
            
As a threshold matter, Summers argues that Entergy failed to satisfy section 
406.123’s requirement that the general contractor (Entergy) and subcontractor 
(IMC) execute a written agreement under which Entergy would provide workers’ 
compensation coverage. Entergy counters that a reference to “O.P.I.P. wage 
rates” in a “Blanket Contract Order” sent to IMC constitutes the requisite 
agreement because this acronym refers to “owner provided insurance program.”
            
Summers’s “no written agreement” argument was not 
raised in the trial court as a ground for denying summary judgment. Thus, Summers has waived this argument.[8] The sole remaining question is whether 
Entergy is a “general contractor” and thus a deemed employer under the Labor 
Code.
B. Whether Entergy Is a “General Contractor” Under the 
Act
1.      
The Act’s Current Definitions of “General Contractor” and “Subcontractor” Do 
Not Preclude a Dual Role for Premises Owners
 
            
“Our primary objective” when construing statutes “is to determine the 
Legislature’s intent, which, when possible, we discern from the plain meaning of 
the words chosen.”[9] Where the statutory text is unambiguous, 
we adopt a construction supported by the statute’s plain language, unless that 
construction would lead to an absurd result.[10] We presume that every word of a statute 
was used for a purpose,[11] and likewise, that every word excluded 
was excluded for a purpose.[12]
            
The court of appeals determined that Entergy was not a general contractor 
because “Entergy did not establish it had undertaken to perform work or services 
and then subcontracted part of that work to IMC, as a general contractor would 
have done.”[13] The court borrowed from the decision in 
Williams v. Brown & Root, Inc., stating that “[a] general contractor 
is any person who contracts directly with the owner, the phrase not being 
limited to one undertaking to complete every part of the work.”[14] The Williams court noted that an 
entity that “did not contract with the owner, but instead was the owner” was 
arguably not protected by the exclusive-remedy provision.[15] Rather than adhering to the Labor Code’s 
specific definition of “general contractor,”[16] the Williams court looked to a 
secondary source, Corpus Juris Secundum.[17] But the Legislature has instructed that 
where words are statutorily defined, courts should construe the terms according 
to that particular meaning.[18] Contrary to the suggestion in 
Williams that an owner cannot be a general contractor because it cannot 
contract with itself, the Labor Code’s definition of “general contractor” does 
not prohibit a premises owner who “undertakes to procure the performance of work 
or a service” from also being a general contractor.[19]
            
The Williams court and the court of appeals in this case also relied on 
Wilkerson v. Monsanto Co., in which a federal district court held that a 
premises owner was not a statutory employer.[20] Wilkerson’s analysis, however, 
turned on the statute’s then-applicable definition of a “subcontractor” as “a 
person who has contracted to perform all or any part of the work or services 
which a prime contractor has contracted with another party to perform.”[21] Wilkerson interpreted the 
reference to a prime contractor’s having “contracted with another party” as 
indicating that the prime contractor and premises owner could not be the same 
entity.[22] The currently applicable definition of 
“subcontractor,” however, reads: “a person who contracts with a general 
contractor to perform all or part of the work or services that the general 
contractor has undertaken to perform.”[23] This present-day definition does not 
preclude a premises owner from serving as its own general contractor and 
undertaking to perform work on its premises by retaining subcontractors. We 
therefore disagree with the court of appeals in the pending case that the 
current definition of subcontractor is inconsistent with a premises owner acting 
as general contractor.
            
In short, the governing Labor Code definitions of general contractor and 
subcontractor do not forbid a premises owner from also being a general 
contractor.
 2.     
A Generic Statement Disclaiming Substantive Changes Cannot Trump the Statute’s 
Clear and Specific Wording
 
Summers 
maintains that under Williams and Wilkerson the pre-1993 statute 
precluded this dual role. He further argues that the Labor Code’s statement that 
1993 amendments were intended to revise the law “without substantive change”[24] indicates that the Legislature intended 
to exclude premises owners from the definition of general contractor. The 
general statement that a recodification is not 
intended to effect substantive changes does not, however, override the plain 
wording of the statutory provisions directly in issue in this case. “While we 
generally presume the Legislature accepts judicial interpretations of a statute 
by reenacting it without substantial change,” we recently made clear that “we do 
not make that presumption when there have been substantial changes, or when it 
would contradict the statute’s plain words.”[25] And even if the earlier statutory 
definition of subcontractor suggested that the prime contractor and premises 
owner must be separate entities, and the revised Code states that no substantive 
change was intended, “prior law and legislative history cannot be used to alter 
or disregard the express terms of a code provision when its meaning is clear 
from the code when considered in its entirety, unless there is an error such as 
a typographical one.”[26] General statements that no substantive 
change is intended “must be considered with the clear, specific language used” 
in the substantive provisions of the revised code, and “[t]o the extent that 
these latter sections of the [code] do change prior law, the specific import of 
their words as written must be given effect.”[27] In this case, the current definitions of 
general contractor and subcontractor contain no language mandating or implying 
that a premises owner cannot serve as its own general contractor.
            
Construing the statute according to its plain and ordinary meaning, Entergy is a 
general contractor because it “[undertook] to procure the performance of work” 
from IMC.[28] That Entergy took on the task of 
procuring[29] the performance of work from IMC is 
beyond dispute: Deposition testimony established that Entergy hired IMC to 
supply workers to perform maintenance, including “water and turbine-related, 
generator-related work,” at its Sabine Plant. Thus, Entergy was a general 
contractor entitled to the Labor Code’s exclusive-remedy defense. The fact that 
Entergy also owns the premises where the accident occurred is immaterial.
III. Conclusion
            
Labor Code section 406.123 bars Summers’s tort claims. 
Accordingly, we reverse the court of appeals’ judgment and render judgment in 
favor of Entergy.
 
__________________________________            
                                          
                              
            
            
Don R. 
Willett
Justice
 
Opinion delivered: August 31, 
2007








[1] 
The letter refers to what is now La. 
Rev. Stat. Ann. § 23:1061 (1998), which provides a defense to tort 
liability for a “statutory employer” under Louisiana law. The addendum was suggested by 
IMC’s attorney, was sent by IMC’s president from his offices in Louisiana to an Entergy employee in Texas, and was then 
signed by Entergy and mailed back to IMC. Entergy’s Sabine Station plant is 
located in Texas.

[2] 
Unless an employee waives workers’ compensation coverage, the employee forfeits 
any common-law or statutory right of action to recover damages from an employer 
for personal injury or death sustained in the course and scope of employment, 
Tex. Lab. Code § 406.034, and the 
employee’s sole remedy against an employer is recovery of workers’ compensation 
benefits, id. § 408.001(a). 

[3] 
___S.W.3d___.

[4] 
Tex. Lab. Code § 
408.001(a).

[5] 
Id. 
§ 406.121(1) (“The term includes a ‘principal contractor,’ ‘original 
contractor,’ ‘prime contractor,’ or other analogous term.”).

[6] 
Id. 
§ 406.123(a).

[7] 
Id. 
§ 406.123(e).

[8] 
See Tex. R. Civ. P. 
166a(c).

[9] 
State v. Shumake, 199 S.W.3d 279, 284 
(Tex. 
2006).

[10] Fleming Foods of Tex., Inc. v. Rylander, 6 
S.W.3d 278, 284 (Tex. 1999).

[11] Eddins-Walcher Butane Co. v. Calvert, 298 
S.W.2d 93, 96 (Tex. 1957).

[12] Cameron v. Terrell & Garrett, 
Inc., 618 S.W.2d 535, 540 (Tex. 1981).

[13] ___S.W.3d at ___.

[14] Id. (alteration in original) (internal 
quotation marks omitted) (quoting Williams v. Brown & Root, Inc., 947 
S.W.2d 673, 677 (Tex. App.—Texarkana 1997, no writ)).

[15] Williams, 947 
S.W.2d at 677.

[16] The Williams court quoted the 
then-applicable statutory definition of general contractor, id. at 676, 
which is virtually identical to the current definition.

[17] Id. at 677 (quoting 17 C.J.S. 
Contracts § 11 (1963)).

[18] Tex. Gov’t Code § 311.011(b).

[19] See Tex. Lab. Code § 406.121(1).

[20] 782 F. Supp. 1187, 1188 (E.D. Tex. 
1991).

[21] Tex. Rev. Civ. Stat. art. 8308-3.05 
(Vernon 1991) 
(emphasis added); Wilkerson, 782 F. Supp. at 1189.

[22] See Wilkerson, 782 F. Supp. at 
1188-89.

[23] Tex. Lab. Code § 406.121(5).

[24] Id. § 1.001(a).

[25] State Farm Life Ins. Co. v. Martinez, 216 S.W.3d 799, 804 (Tex. 2007) (footnotes 
omitted).

[26] Fleming Foods of Tex., Inc. v. Rylander, 6 
S.W.3d 278, 284 (Tex. 1999).

[27] Id.

[28] Tex. Lab. Code § 406.121(1).

[29] “Procure” means “to obtain by care or 
effort, to acquire.” Oxford American 
Dictionary 533 (Eugene Ehrlich et al. eds., 1980) 
(1979).