Opinion issued March 3, 2011


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In
The

Court
of Appeals

For
The

First
District of Texas

————————————

NO. 01-09-00778-CV

———————————

Manuel valadez, Appellant

V.

memc pasadena, inc. d/b/a memc electronic 

materials
pasadena, inc., Appellee



 



 

On Appeal from the 234th District Court 

Harris County, Texas



Trial Court Case No. 2008-59250

 



 

MEMORANDUM OPINION

Appellant Manuel Valadez appeals
from the trial court’s summary judgment against him on his negligence suit
against appellee MEMC Pasadena, Inc. d/b/a MEMC Electronic Materials Pasadena,
Inc. (“MEMC”).  In a single issue,
Valadez argues that the trial court erred in granting judgment in favor of MEMC
because Valadez’s claim was not barred by the exclusivity provision of the Workers’
Compensation Act.  MEMC contends that the
trial court correctly granted summary judgment on the basis of the Workers’
Compensation Act and, in two cross-points, argues that the trial court’s
summary judgment can also be affirmed on two alternative grounds presented but
not reached by the trial court.  MEMC’s
alternative grounds are (1) Valadez’s action was barred under Chapter 95 of the
Civil Procedure and Remedies Code, and (2) Valadez could not establish a
negligence claim as a matter of law.[1]  We hold that Valadez’s claim against MEMC is
not barred by the Workers’ Compensation Act but is barred under Chapter
95.  Because we can uphold the trial
court’s judgment on the basis of MEMC’s first cross-point, we do not reach
MEMC’s second cross-point.  We affirm.

Background

MEMC owns and operates a chemical
process facility in Pasadena, Texas. 
MEMC subcontracted maintenance of the Pasadena facility to Turner
Industries Group, LLC (“Turner”).  MEMC’s
contract with Turner required Turner to maintain workers’ compensation coverage
for its employees, which Turner did.  Valadez,
an employee of Turner, is an industrial pipefitter and boilermaker.  On January 27, 2007, Valadez was injured
while performing work at the MEMC facility. 
Attempting to measure the space for a pipe jack, Valadez stepped on a
bucket in order to reach the tape measure to the top of the space below the
pipe.  As he went up, Valadez grabbed
onto the pipe to help balance himself. 
When he did so, the pipe came loose and Valadez fell backward, with the
pipe landing on his ankle.

As a result of this accident,
Valadez claimed and received workers’ compensation benefits for approximately a
year and a half under the coverage procured by Turner.  In October 2008, Valadez brought this negligence
action against MEMC.  MEMC moved for summary
judgment on Valadez’s claim, arguing that the claim was barred by the
exclusivity provision of the Workers’ Compensation Act, that the claim failed
to meet the requirements under Chapter 95, and that Valadez could not prevail
on a common law negligence claim.  The
trial court granted summary judgment in favor of MEMC on the basis of the
Workers’ Compensation Act and did not reach MEMC’s Chapter 95 and common law
grounds for summary judgment.




 

Summary
Judgment Standard of Review

We review a
trial court’s decision to grant summary judgment de novo.  Mann Frankfort Stein & Lipp Advisors, Inc. v.
Fielding, 289 S.W.3d 844, 848 (Tex. 2009); Valence Operating Co. v.
Dorsett, 164 S.W.3d 656,
661 (Tex. 2005).  We review the evidence
presented in the motion and response in the light most favorable to the party
against whom the summary judgment was rendered, crediting evidence favorable to
that party if reasonable jurors could and disregarding contrary evidence unless
reasonable jurors could not.  Fielding, 289 S.W.3d at 848; City of Keller v. Wilson, 168
S.W.3d 802, 827 (Tex. 2005).  We must
review all of the summary judgment grounds on which the trial court ruled that
are dispositive of the appeal, and we may consider any other grounds on which
the trial court did not rule. See Baker Hughes, Inc. v. Keco R. & D.,
Inc., 12 S.W.3d 1, 5 (Tex. 1999) (citing Cincinnati Life Ins. Co. v.
Cates, 927 S.W.2d 623, 624
(Tex. 1996)).  However, “[i]ssues not
expressly presented to the trial court by written motion, answer or other
response shall not be considered on appeal as grounds for reversal.”  Tex.
R. Civ. P. 166a(c).

MEMC’s motion
for summary asserted both traditional and no-evidence grounds.  On a motion for traditional summary judgment, the movant
bears the burden of demonstrating that no genuine issue of material fact exists
and that it is entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c); KPMG Peat Marwick v. Harrison Cnty. Hous. Fin.
Corp., 988 S.W.2d 746, 748
(Tex. 1999).  A defendant-movant may meet
this burden by conclusively negating at least one essential element of each of
the plaintiff’s causes of action or by conclusively establishing each element
of an affirmative defense.  Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).  

A
no-evidence summary judgment is essentially a directed verdict granted before
trial, to which we apply a legal sufficiency standard of review.  King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750–51 (Tex. 2003).  A party moving for no-evidence summary
judgment must specifically state the element or elements of a claim for which
there is no evidence. Id. at
751; Green v. Indus. Specialty Contractors, Inc., 1 S.W.3d 126,
130 (Tex. App.—Houston [1st Dist.] 1999, no pet.).  The burden then shifts to the nonmovant to
raise a fact issue on each of the challenged elements.  Tex. R.
Civ. P. 166a(i).  A no-evidence
summary judgment will be sustained when (a) there is a complete absence of
evidence of a vital fact, (b) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact,
(c) the evidence offered to prove a vital fact is no more than a scintilla, or
(d) the evidence conclusively establishes the opposite of a vital fact.   King
Ranch, 118 S.W.3d at 751 (quoting
Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)).  Less than a scintilla of evidence exists when
the evidence is “so weak as to do no more than create a mere surmise or
suspicion” of a fact.  Id. (quoting Kindred v. Con/Chem.,
Inc., 650 S.W.2d 61, 63
(Tex. 1983)).  More than a scintilla of
evidence exists when the evidence “rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions.”  Id.
(quoting Merrell Dow Pharms.,
953 S.W.2d at 711).

Statutory
Construction Standard of Review

Statutory
construction is a legal question, which is reviewed de novo to ascertain
and give effect to the Legislature’s intent.  HCBeck,
Ltd. v. Rice, 284 S.W.3d 349, 352 (Tex. 2009) (citing F.F.P.
Operating Partners, L.P. v. Duenez, 237 S.W.3d
680, 683 (Tex. 2007)).  To discern that
intent, we must begin with the “plain and common meaning of the statute’s
words.”  Id. (citing Tex. Dep’t of Transp. v. City of Sunset Valley, 146 S.W.3d 637, 642 (Tex. 2004)).
We also consider the objective the Legislature sought to achieve through the
statute, as well as the consequences of a particular construction.  Id. (citing Tex. Dep’t of Transp., 146 S.W.3d at 642; see also Tex. Gov’t Code Ann. § 311.023(1), (5)).  Generally, we accept the ordinary meaning of
words used unless the Legislature provides a specific statutory definition.  Cities of Austin, Dallas, Fort Worth &
Hereford v. Sw. Bell Tel. Co., 92 S.W.3d 434, 442 (Tex. 2002).  




 

The
Workers’ Compensation Act

 

In his sole
issue, Valadez contends that the trial court erred by determining that the
exclusivity provision of the Workers’ Compensation Act precludes his negligence
claim against MEMC.

A.      Introduction to Applicable Workers’
Compensation Law

The purpose
of the Texas Workers’ Compensation Act is to provide employees with certainty
that their medical bills and lost wages will be covered if they are injured,
without the time and expense of litigation.  HCBeck,
Ltd. v. Rice, 284 S.W.3d 349, 350 (Tex. 2009); Hunt Constr.
Group, Inc. v. Konecny, 290 S.W.3d 238, 247
(Tex. App.—Houston [1st Dist.] 2008, pet. denied).  The Act encourages employers to participate
in workers’ compensation insurance with both the carrot and the stick:
employers who do not subscribe are precluded from relying on common law
defenses to negligence suits brought by employees injured on the job, Tex. Lab. Code Ann. § 406.033 (West
2006); employers who do subscribe are entitled to assert the exclusivity of the
workers’ compensation remedy as a bar to negligence actions brought by injured
employees, Tex. Lab. Code Ann. §
408.001(a) (West 2006).  See also HCBeck, 284 S.W.3d at 350; Hunt, 290 S.W.3d at 247 (citing Kroger
Co. v. Keng,
23 S.W.3d 347, 350 (Tex. 2000)). 

The
exclusivity defense is found in Section 408.001(a) of the Act.  It states: “Recovery of workers’ compensation
benefits is the exclusive remedy of an employee covered by workers’
compensation insurance coverage or a legal beneficiary against the employer or
an agent or employee of the employer for the death of or a work-related injury
sustained by the employee.”  Tex. Lab. Code Ann. § 408.001(a).[2]  A general contractor may qualify as “the
employer” within the meaning of this statute if the general contract “provides”
workers’ compensation insurance coverage to the subcontractor and its employees
pursuant to a written agreement.  Tex. Lab. Code Ann. § 406.123(a), (e)
(West 2006);[3] HCBeck, 284 S.W.3d at 350. 
In this scenario, the general contractor and its “employees” under the
Act may assert the exclusivity defense against any subcontractors or employees
of subcontractors for which the general contractor has “provided”
coverage.  E.g., HCBeck, 284 S.W.3d at 350; Hunt, 290 S.W.3d at 246; Funes
v. Eldridge Elec. Co., 270 S.W.3d 666, 671 (Tex.
App.—San Antonio 2008, no pet.).

B.      Analysis

The question in this case asks what
the circumstances must show for a general contractor to “provide” workers’
compensation insurance within the meaning of the Act, such that the general
contractor is entitled to assert the Act’s exclusivity defense.  The parties agree that this case is governed
by the Texas Supreme Court’s decision in HCBeck,
but disagree about the case’s import. 
Valadez asserts that this case is distinguishable from HCBeck because the general contractor in
HCBeck was contractually obligated to
provide workers’ compensation insurance in the event the Owner Controlled
Insurance Policy (“OCIP”) was terminated; but MEMC has no contractual
obligation to provide workers’ compensation coverage for Turner or its employees.  Valadez argues that a general contractor like
MEMC does not “provide” coverage if the general contractor is not contractually
obligated to purchase the insurance itself or compensate the purchaser for the
insurance premiums.    

MEMC responds that it “provided”
workers’ compensation coverage to Turner by contractually requiring Turner to
maintain such coverage as a condition for Turner’s participation in the subcontract
with MEMC.  MEMC points out that the
general contractor in HCBeck had not
paid for or reimbursed the workers’ compensation premiums at issue in that case
and was still determined to have “provided” coverage within the meaning of the
statute. 

We conclude that merely requiring
the subcontractor to obtain its own workers’ compensation insurance does not
constitute “providing” coverage within the meaning of the statute. 

          1.       Cases Interpreting the Term “Provides”
Coverage

                   a.       HCBeck v. Rice

In HCBeck, FMR Texas Ltd. contracted with HCBeck, Ltd. to construct an
office on FMR’s property.  HCBeck, 284 S.W.3d at 350.  The contract between FMR and HCBeck required
HCBeck and all of its subcontractors to enroll in FMR’s OCIP, which included
workers’ compensation insurance.  Id.  The
agreement permitted FMR to terminate the OCIP but required, in such instance,
that HCBeck obtain replacement insurance, including equivalent workers’
compensation coverage, for itself and its subcontractors at FMR’s expense.  Id.
at 350–51.

HCBeck subcontracted with Haley Greer.  Id.
at 351.  Pursuant to the FMR-HCBeck
contract, HCBeck’s subcontract with Greer required Greer to enroll in FMR’s OCIP,
which Greer did.  Id.  When Charley Rice, one
of Greer’s employees, was injured on the job, he claimed and received workers’
compensation benefits under the policy issued to Greer by FMR.  Id.  Rice subsequently brought a negligence
suit against HCBeck.  Id.  HCBeck
moved for summary judgment, arguing that it was entitled to assert the Workers’
Compensation Act’s exclusive remedy defense pursuant to Sections 406.123(a) and
408.001(a).  Id.  Rice argued HCBeck did
not “provide” worker’s compensation coverage — and therefore could not rely on
the statutory defense — because HCBeck did not, and was not contractually
obligated to, pay for Greer’s workers’ compensation insurance.  Id.  The trial court granted HCBeck’s motion for
summary judgment, but the court of appeals reversed and remanded, concluding that
HCBeck did not “provide” workers’ compensation coverage because the subcontract
called for Greer to obtain its own alternate insurance if FMR terminated the
OCIP.  Id. at 354.  

The Texas Supreme Court reversed the
court of appeals, rejecting its conclusion that the subcontract put the
obligation of obtaining alternate insurance on Greer.  The court read the contract as imposing the
obligation of obtaining alternate insurance on HCBeck in the first instance and
on Greer only if HCBeck defaulted on that obligation.  Id. at
353–54.  The court determined that this
was sufficient to satisfy the Act’s requirements even though HCBeck did not
actually obtain or pay for Greer’s workers’ compensation insurance.  Id. at
353 (“[Section 406.123(a)] does not require a general
contractor to actually obtain the insurance, or even pay for it directly.”).  

The court further
observed that “the Texas workers’ compensation insurance scheme, as enacted by
the Legislature, was intended to make the exclusive remedy defense available to
a general contractor who, by use of a written agreement with the owner and
subcontractors, provides workers’ compensation insurance coverage to its
subcontractors and the subcontractors’ employees.”  Id. at
360.  The court concluded that the
OCIP, which was established and paid for by FMR pursuant to its contract with
HCBeck, qualified as “providing” coverage under the Act pursuant to Section
406.123(a).  Therefore, the court held
that HCBeck was entitled to assert the exclusivity defense because it had
provided coverage to Greer’s employees by virtue of the OCIP.  Id.  

b.      Hunt
Construction Group, Inc. v. Konecny and Funes v. Eldridge Electric Co.

 

          While HCBeck was
pending in the Supreme Court of Texas, an appeal involving similar facts came
before this court.  See Hunt Constr. Group, Inc.,
290 S.W.3d at 245–47.  Hunt also involved an OCIP, provided by the
Harris County Houston Sports Authority to the general contractor and
subcontractors on a construction project that is now the Toyota Center.  Id. at
240–41.  The contract between the Sports
Authority and its general contractor, Hunt, required Hunt and all of its
subcontractors at every tier to participate in the OCIP and include the OCIP
requirements in every subcontract.  Id.  Hunt
subcontracted the ventilation and air conditioning work to Way, which in turn
subcontracted the sheet metal and duct work to Superior.  Id. at
240.  Hunt subcontracted the application
of fireproofing material to Desert Plains, Inc. 
Id. at 241.  The OCIP provisions were included in Hunt’s
subcontracts with Way and Desert Plains and in Way’s subcontract with Superior.  Id. at
241.  The OCIP provisions provided that:
(1) Sports Authority would provide workers’ compensation for contractors and
subcontractors of every tier and pay all premiums; (2) participation in the
OCIP was “mandatory but not automatic,” making coverage dependent on
eligibility; (3) contractors and subcontractors not enrolled in the OCIP were
required to maintain their own insurance and provide certificates of insurance
to the Sports Authority; and (4) contractors could not permit any subcontractor
to enter the project site prior to OCIP enrollment unless the subcontractor was
ineligible for the OCIP and covered by its own insurance.  Id.
at 241–42.  

          Konecny, a foreman for Superior, was injured on the job
while sharing the construction site with employees of Desert Plains.  Id.
at 242. 
He claimed and received workers’ compensation benefits pursuant to
the OCIP coverage.  Id.  He subsequently brought
negligence claims against Hunt, Way and Desert Plains.  Id.
at 240.  The trial court entered judgment
on a jury award in favor of Konecny.  Id. at 242.  On appeal, Hunt argued that the trial court
erred in denying its motions for directed verdict and judgment notwithstanding
the verdict because Konecny’s claims against it were barred by the exclusivity
provision of the Workers’ Compensation Act. 
Id.  We concluded that Hunt was a general
contractor who “provided” workers’ compensation insurance within the meaning of
Section 406.123(a) and, therefore, Hunt and its “employees” under the Act — Superior
and Way — were entitled to judgment on the basis of the exclusivity provision
of the Workers’ Compensation Act.  Id. at 245–47.

          In determining that Hunt was entitled to the exclusivity
defense, we rejected Konecny’s argument that Hunt did not “provide” coverage
because the Sports Authority, rather than Hunt, obtained the policy and paid
the premiums.  Id. at 245– 46 (citing Funes v. Eldridge Elec. Co., 270 S.W.3d 666, 671 (Tex. App.—San
Antonio 2008, no pet.); Williams v. Razor Enters., Inc., 70 S.W.3d 274, 277 n.6 (Tex. App.—San
Antonio 2002, no pet.); Williams v. Brown & Root, Inc., 947 S.W.2d 673, 678 (Tex. App.—Texarkana
1997, no pet.)).  We held that Section
406.123(a) was unambiguous and the term “provide” should be given its plain
meaning: “to supply or make available.”  Id. at 245 (citing Webster’s Ninth New
Collegiate Dictionary 948 (1990); see
Funes, 270 S.W.3d at 671).  

In so
holding, we relied in part on the San Antonio Court of Appeals’s interpretation
of the same provision in Funes:

[W]e
apply the plain and common meaning of the word “provide” within its reasonable
context, which we determine to be “to supply or make available.”  With this definition in mind, we construe
subsection 406.123(a) to mean the following: where a general contractor and a
subcontractor enter into a written agreement under which the general contractor
supplies
or makes available workers’ compensation insurance coverage to the
subcontractor and its employees, the general contractor is the employer of the
subcontractor and its employees for purposes of the Workers’ Compensation Act,
as provided under subsection 406.123(e). 

 

Funes,
270 S.W.3d at 671 (internal citations omitted) (holding that employee of
subcontractor was barred from bringing suit against general contractor’s other
subcontractor where subcontracts obligated subcontractors to participate in
OCIP and both subcontractors did participate in OCIP).  

Consistent
with this definition of “provide,” we concluded in Hunt that Hunt did “provide” workers’ compensation insurance to its
subcontractors and was thus an employer under the Act.  Hunt,
290 S.W.3d 246.  Because the subcontractors
in Hunt received the OCIP coverage
provided by Hunt, we concluded that they and their employees were employees of
Hunt under the Act.  Id. at 247.  We therefore
held that Konecny’s sole remedy was workers’ compensation and his negligence
claim against Hunt, Way and Desert Plains were barred.  Id. 

                    2.       Application
of Cases Interpreting “Provides” Coverage

          In HCBeck, HCBeck
was ultimately financially responsible for the workers’ compensation coverage
because, as the Texas Supreme Court determined, HCBeck would be required to
procure coverage for Greer in the event that FMR terminated the OCIP.  Id. at
353–54. 
In Hunt and Funes, however, the courts made no distinction
with respect to responsibility for coverage in the absence of the OCIP.  See
Hunt, 290 S.W.3d 245–47; Funes, 270 S.W.3d at 671–73.  HCBeck
cited both Hunt and Funes favorably in this respect.  HCBeck,
284 S.W.3d at 358–59.  It is the
provision of coverage, not the responsibility in the event of its absence, that
supports the exclusivity defense.  See id. at 359 (noting that this
interpretation of the statute favors blanket coverage of all workers in
multi-tiered contractor relationships in manner that serves the Legislature’s
“decided bias” for coverage).

          However,
as both parties agree, the subcontract at issue in this case only requires
Turner to obtain workers’ compensation for itself as a requisite for
participation in the project.  It does
not “supply or make available” workers’ compensation to Turner or Turner’s
employees; it merely requires the subcontractor to independently acquire its
own coverage.  Cf. Hunt, 290 S.W. 3d
245; Funes, 270 S.W.3d at 671–72.  MEMC cites no authority where such a
contractual requirement for self-supplied coverage by the subcontractor has
been held to entitle a general contractor to invoke the exclusive remedy
defense of the Workers’ Compensation Act. 
MEMC has not contractually “provided” coverage for Turner and its
employees, and thus does not qualify as an “employer” under the Act.  See Hunt,
290 S.W.3d 245; Funes, 270 S.W.3d at
671; Tex. Lab. Code Ann. §
406.123(a), (e). 
MEMC therefore may not uphold its summary judgment on the basis of the
exclusivity provision of the Workers’ Compensation Act.








Chapter 95

A second ground for summary judgment
MEMC asserted in its motion was that Valadez failed to satisfy Section 95.003
of the Civil Practice and Remedies Code because neither of the statute’s
requisites for liability — control and actual knowledge — were met.  In a cross-point, MEMC argues that the trial
court’s judgment can be affirmed on this alternative ground.  Valadez did not address this issue in his
appellant’s brief, nor did he respond to MEMC’s cross-point in his reply
brief.  This Court entered an order
noting that MEMC had raised cross-points and allowing Valadez additional time
to file briefing addressing the cross-points, but Valadez declined to file
briefing on the cross-points.  In
addressing MEMC’s Chapter 95 cross-point, we look to the summary judgment
briefing to determine the arguments raised by the parties before the trial
court.  See, e.g., Travis v. City of Mesquite, 830 S.W.2d 94, 100 (Tex.
1992) (observing that appellate court’s review of summary judgment is limited
to arguments presented to trial court); Klentzman
v. Brady, 312 S.W.3d 886, 909 n.14 (Tex. App.—Houston [1st Dist.] 2009, no
pet.) (same).

Section 95.003 reads:

A
property owner is not liable for personal injury, death, or property damage to
a contractor, subcontractor, or an employee of a contractor or subcontractor
who constructs, repairs, renovates, or modifies an improvement to real property,
including personal injury, death, or property damage arising from the failure
to provide a safe workplace unless:

 

(1)      
the property owner exercises or
retains some control over the manner in which the work is performed, other than
the right to order the work to start or stop or to inspect progress or receive
reports; and

 

(2)   the property
owner had actual knowledge of the danger or condition resulting in the personal
injury, death, or property damage and failed to adequately warn.

 

Tex. Civ. Prac. & Rem. Code
Ann.
§ 95.003 (West 2005). 

 

In its motion for summary judgment, MEMC
asserts Valadez has no evidence of control or actual knowledge and provides
evidence purporting to show a lack of control or actual knowledge.  Valadez’s response includes evidence that he asserts
raises an issue of fact on each of those issues.  Valadez did not contest that Chapter 95 applies
to his claim.  We conclude that Valadez
presented no evidence sufficient to raise a question of fact as to whether MEMC
had actual knowledge of the danger or condition that allegedly caused his
injury.  Because Valadez did not contest
the applicability of Chapter 95 and did not raise an issue of fact on the
prerequisite of actual knowledge, summary judgment was proper. 

A.      Actual Knowledge

As evidence of actual knowledge, Valadez
relies largely on the deposition testimony of Genarro Arredando.  The cited portions of Arredando’s deposition
relevant to an actual knowledge inquiry tend to show the following:

·       
after Valadez’s accident, Arredando called out
to three MEMC employees who were located on the ground, approximately 20 feet
below where Valadez and Arredando were located;

 

·       
these operators saw the buckets in the area
where Valadez and Arredando were located, but Arredando did not specify whether
this was before or after the accident;

 

·       
at a post-accident meeting where he was asked
about how the accident happened, he told MEMC personnel that they were trying
to put in a pipe jack to support the line and Valadez was measuring for the
jack;

 

·       
the shutdown process that Turner was performing
at the time of Valadez’s accident was a process that they performed every six
months; and

 

·       
one crewmember left to speak to MEMC about the
job that Turner was performing at the time of Valadez’s accident, but there is
no indication in the cited portions of the record of what, if anything, this
crewmember may have said to MEMC.

 

This testimony tends to show that,
prior to Valadez’s accident, MEMC had actual knowledge that Valadez and other
Turner employees were present in the area and were performing work.  Arredando’s testimony does not show that MEMC
had actual knowledge of the alleged dangerous condition created by Valadez’s
use of a bucket as a stepping stool and grabbing onto a pipe to balance himself.

Valadez also cites to his own
deposition testimony and incorporates by reference the affidavit of his expert,
Stephen Astrin.  Valadez relies on his
own testimony for the proposition that MEMC employees were present when another
Turner employee instructed Valadez to take a pipe out of the bottom of the
reactor.  While Valadez may be citing
this testimony as evidence of control, it does not tend to show that MEMC had
any actual knowledge of a danger or condition that allegedly caused Valadez’s
injury.[4]  Having reviewed the Astrin affidavit, we
observe that its addresses whether MEMC complied with certain standards of
care, whether such noncompliance caused Valadez’s injury, and whether MEMC
exercised control over Turner’s work, but does not address whether MEMC had
actual knowledge of a dangerous condition. 
  

We conclude that the evidence
presented by Valadez does not constitute more than a scintilla of evidence that
MEMC had “actual knowledge of the danger or condition” that
allegedly resulted in Valadez’s injuries. 
See
Tex. Civ. Prac. & Rem. Code Ann. §
95.003(2).  

          B.      Control

Having
determined that Valadez has not presented evidence sufficient to raise an issue
of fact as to whether MEMC had actual knowledge of the alleged dangerous
condition, we need not reach the issue of whether MEMC exercised or retained
control over Valadez’s work as required to satisfy the other prong of Section 95.003.  Section 95.003 precludes liability
unless both prongs of the statute — control and actual knowledge — are
satisfied.  Tex. Civ. Prac. & Rem. Code Ann. § 95.003; Dyall v. Simpson Pasadena Paper Co., 152
S.W. 3d 688, 699 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (noting
that control and knowledge are two independent and necessary conditions to
imposition of liability in Chapter 95 action). 
Therefore, we hold that Section 95.003 of the Civil Practice and
Remedies Code precludes Valadez from establishing liability against MEMC in
this action and affirm the trial court’s judgment on this ground.  

Conclusion

We affirm
the trial court’s judgment.

 

                                                                   Elsa
Alcala

                                                                   Justice


 

Panel consists of Chief Justice Radack and Justices Alcala and Bland.











[1]           MEMC
did not file a separate appeal and raises these cross-points in its appellee’s
brief.  Because MEMC’s cross-points
merely present an alternative basis for affirming the trial court’s and do not
seek more relief that was granted in the judgment, no separate notice of appeal
is required.  See Helton v. R.R. Comm’n of Tex., 126 S.W. 3d 111, 119-20 (Tex.
App.—Houston [1st Dist.] 2003, pet. denied).





[2]           The
statute contains an exception relating to gross negligence claims that is not
implicated here.





[3]           Section
406.123 provides in part:

(a)       A general contractor and a subcontractor may enter into a
written agreement under which the general contractor provides workers’
compensation insurance coverage to the subcontractor and the employees of the
subcontractor.  

. . .

(e)       An agreement under this section makes the general contractor
the employer of the subcontractor and the subcontractor’s employees only for
the purposes of the workers’ compensation laws of this State.  

. . .





[4]           Valadez
also references portions of Arredando’s deposition testimony for certain facts
that may be relevant to the control inquiry but are not relevant to the actual
knowledge inquiry, such as Arredando’s testimony that Turner employees got
raingear from MEMC at the MEMC warehouse, that MEMC requires Turner employees
to wear an oxygen suit when breaking an oxygen line, and that MEMC told Turner
when to start work on the process that Turner was performing at the time of
Valadez’s accident.